IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Shirley G. Lawrence, | Civil Action No. 8:07-3215-MBS-BHH |
| Plaintiff, | |
| vs. | **REPORT AND RECOMMENDATION** |
| Michael J. Astrue, | **OF MAGISTRATE JUDGE** |
| Commissioner of Social Security, | |
| Defendant. | |

This case is before the Court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff, Shirley G. Lawrence, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding her claim for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act.

**RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS**

The plaintiff was 41years old at the time of the Administrative Law Judge's (ALJ) decision. (R. at 45).  The plaintiff has a high school equivalent education and has past relevant work experience as a nursing assistant and housekeeper. (R. at 78-92, 99.) She claims she is disabled because of obesity, arthritis, a torn rotator cuff, slipped discs in the back, sleep apnea, and depression. (R. at 45-47, 95, 357-60.)

The plaintiff filed applications for disability insurance benefits (DIB) and supplemental security income benefits (SSI) in May 2004. (R. at 45-47, 357-60.) After her applications

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

were denied at the initial and reconsideration levels of administrative review, the plaintiff requested a hearing before an ALJ, which was held on October 26, 2005. (R. at 30-44, 361-403). In a decision dated April 21, 2007, the ALJ found that Plaintiff was not disabled and could perform sedentary work (R. 13-24.)   As the Appeals Council denied the plaintiff's request for review (R. at 5-9), the ALJ's decision became the Commissioner's final decision for purposes of judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the administrative law judge:

> (1)    The claimant meets the insured status requirements of the Social Security Act through December 31, 2007.
>
> (2)    The claimant has not engaged in substantial gainful activity since April 23, 2004, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq*).
>
> (3)    The claimant has the following severe impairments: obesity, degenerative arthritis of the left knee, shoulder pain, sleep apnea, and depression (20 CFR 404.1520(c) and 416.920(c)).
>
> (4)    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> (5)    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work with a sit/stand option every 30 minutes. She can lift and carry 10 pounds. She can sit for 6/8 hours, stand for 2/8 hours and walk for 2/8 hours. She can never push/pull with the left lower extremity due to knee pain. She cannot climb ladders, scaffolds, or ropes due to sleep apnea and left knee pain. She can occasionally climb stairs, balance, stoop, kneel, crouch, crawl, and reach overhead.  She should avoid concentrated exposure to temperature extremes and funds and should not be exposed to hazards due to sleep apnea. She can perform simple, 1-2 step tasks.
>
> (6)    The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

(7) The claimant was born on December 6, 1965, and was 38 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

(8) The claimant has a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

(9) The vocational expert testified that the claimant had no transferable skills from past relevant work (20 CFR 404.1568 and 416.968).

(10) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

(11) The claimant has not been under a disability, as defined in the Social Security Act, from April 23, 2004, through the date of this decision (20 CFR. 404.1520(g) and 416.920(g)).

## **APPLICABLE LAW**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. §423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at

20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. *See* 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *See Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. Social Security Ruling ("SSR") 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere

> scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966). Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## DISCUSSION

The plaintiff contends that the ALJ erred in failing to find her disabled. Specifically, the plaintiff alleges that the ALJ erred in (1) failing to consider her obesity at each step of the 5-step sequential evaluation process; (2) failing to find that the combination of all of her impairments was medically equivalent to a disability Listing; and (3) failing to give the opinion of her treating physicians controlling weight. The Court will address each alleged error in turn.

**I.     OBESITY**

The plaintiff first contends that the ALJ erred in applying Social Security Ruling 02-1p in regards to her obesity, insofar as he did not consider the plaintiff's obesity at each step of the five-step sequential process. Specifically, the plaintiff argues that SSR 02-1p recognizes that, at step three, the condition of obesity may very well meet or equal a listed impairment where the plaintiff has severe respiratory, cardiovascular, or musculoskeletal impairments. SSR 02-1p. The plaintiff contends that the ALJ failed to consider her obesity in conjunction with her sleep apnea and lumbar disc degeneration. The plaintiff's contention, however, is unfounded.

At step three, the ALJ expressly considered the plaintiff's knee pain, musculoskeletel impairments, and sleep apnea in conjunction with her obesity. (R. at 15-17.) In fact, the

ALJ noted the plaintiff's testimony that her "weight affects her ability to move around, including kneeling, and that she gets short of breath when walking." (R. at 17.) The plaintiff may disagree with the ALJ's conclusion that the combination of impairments failed to meet any Listing but she cannot complain that the ALJ did not consider the plaintiff's obesity at step three; he clearly did.

Likewise, the plaintiff's contention that the ALJ failed to consider, at steps 4 and 5, the residual effects of obesity such as limitations on walking, lifting, carrying, and pushing and limitations on postural functions such as climbing, balancing, and crouching is also unpersuasive. The ALJ expressly cited the plaintiff's testimony that

> she has back and knee pain and needs a knee replacement. She said that she is unable to kneel, cannot tie her shoes, and she has trouble sleeping due to constant pain. She said that she has difficulty standing and she requires a cane. She said that her weight affects her ability to kneel and causes her to get short of breath while walking.

(R. at 19.) Again, while the plaintiff objects to the ALJ's conclusion that her impairments, including obesity, did not reduce her residual functional capacity to the point of disability, it cannot be argued that he simply failed to consider obesity at step four, as a legal matter. Moreover, the RFC, which the ALJ ascribed at step four, reflected the affect of the plaintiff's obesity as determined by the AlJ. (See R. at 17-22.) The ALJ, therefore, necessarily considered the plaintiff's obesity at step five by including that RFC in his hypothetical question to the vocational expert (R. at 398) who concluded that jobs existed in the national economy which the plaintiff could perform (R. at 399).

The Court would note that the plaintiff's obesity appears to be a substantially serious and limiting impairment. It is uncontested that the plaintiff is a severely obese individual. At all relevant times, the plaintiff weighed 400 pounds and was only 5' 5" tall. (R. at 17.) The Court does not take lightly the limitations which would naturally follow from such a condition. Notwithstanding, the Court has no grounds to conclude that the ALJ's analysis or findings were either wrong as a matter of law or lacked substantial evidence. The

plaintiff is incorrect that the ALJ did not consider the plaintiff's obesity at each step of the sequential process. While she may disagree with his conclusions, the ALJ had substantial evidence to conclude that she could return to her past relevant work and the Court cannot disturb that conclusion.

## II.     Combination of Impairments

The Plaintiff next contends that the ALJ failed to analyze whether the combined effect of the plaintiff's impairments was medically equivalent to a listed impairment. The ALJ is required to determine if a claimant has a combination of impairments which are medically equivalent to a listed impairment, even if no one impairment met any listing singly. 20 C.F.R. §§ 404.1526(b)(3). While the plaintiff concedes that the ALJ performed a listing analysis for each of the plaintiff's impairments, individually, the plaintiff argues that the ALJ offered no explanation as to why the combination of her severe impairments did not constitute medical equivalence. To that end, the plaintiff simply recites evidence related to treatment that the plaintiff sought for her various impairments and the conclusion of Dr. Kim that "[t]he patient was encouraged not to do anything that required sustained concentration or attention that may endanger her life or the safety of others." (R. at 135.)

The plaintiff cannot prevail on this objection because she has not presented evidence that the combined effects of her impairments would equal any Listing. The United States Supreme Court has stated, "For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (emphasis added) (quoting 20 CFR § 416.926(a)). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Id.* In other words, the combination of impairments does not meet a Listing simply by virtue of the overall functional

7

impact of those impairments.  The plaintiff must still demonstrate how the impairments, when taken together, meet the specific criteria of the Listing in question.

The plaintiff has failed to so demonstrate on appeal.  The plaintiff has not identified to which specific listing her combined impairments are equivalent nor has she explained how her impairments meet the specific criteria of any such listing.  Even if the ALJ did not properly consider evidence of the plaintiff's impairments in combination, the plaintiff has made no attempt to demonstrate how such consideration would have demonstrated that the criteria of Listings 1.02, 1.04, or 12.04 were satisfied.   Instead, she has generally put forward evidence that her overall functional level was substantially diminished by the combination of such impairments and that she required various treatment. (R. at 122, 135, 210, 326.)  That is not sufficient. *See Sullivan*, 493 U.S. at 531.  Therefore, any error of the ALJ in considering or explaining the combined effects of the plaintiff's impairments is harmless, in the absence of evidence that the outcome would have been different.  *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994)

But, in fact, the plaintiff is wrong that the ALJ did not make any express analysis of the combined  effect of the impairments at step three.  The ALJ expressly stated that he had considered the plaintiff's severe impairments singly and in combination and found that they did not meet any of the Listings.   (R. at 14, 15.)  As far as the Court can tell, nothing more is required.  *See Eggleston v. Bowen*, 851 F.2d 1244, 1247 (10th Cir. 1988) (finding that where the decision addressed the claimant's various impairments, there was "nothing to suggest they were not properly considered" in combination).  Further, it appears to the Court that as he considered each Listing, the ALJ was not necessarily limiting his analysis to any individual impairment but instead looking at all relevant impairments to determine if in combination they met the listing. (R. at 16-17.)

The ALJ's treatment could have been more thorough. It is not apparently erroneous, however.   And,  the  plaintiff  has  not  demonstrated  that  the  combined  effects  of  her

impairments would have been found to have met the criteria of any particular Listing, even had the ALJ done more.

### III.     Treating Physician

The plaintiff lastly contends that the ALJ failed to give the opinions of her treating neurosurgeon, Drs. Dudley Autio, Gerald Congdon, and Michael Bohan, controlling authority.  The medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.  *See* 20 C.F.R. §416.927(d)(2)(2004); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig v. Chater*, 76 F.3d 858, 590 (4th Cir. 1996).  Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence."   *Mastro v. Apfel*, 270 F.3d at 178 (*citing Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)).

A "medical opinion," is a "judgment[ ] about the nature and severity of [the claimant's] impairment(s), including [his] symptoms, diagnosis and prognosis, what [he] can still do despite impairment(s), and [his] physical or mental restrictions."   20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).  However, statements that a patient is "disabled" or "unable to work" or meets the Listing requirements or similar statements are not medical opinions. These are administrative findings reserved for the Commissioner's determination. SSR 96-2p.  Furthermore, even if the plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision.  *See Blalock*, 483 F.2d at 775.

The Court agrees with the defendant that the ALJ gave significant weight to Dr. Bohan's opinion that the plaintiff could perform a range of sedentary work.  Dr. Bohan stated that the plaintiff was limited to sedentary work with no lifting with the right arm and

was unable to do standing work.  (R. at 299-300.) He indicated that the plaintiff could occasionally lift and carry 10 pounds; needed to change position after one-to-two hours of sitting and 30-to-60 minutes of standing; could not push or pull with her upper extremities; would be absent from work more than three times per month; could occasionally "reach above;" and could never bend, squat, crawl, climb, stoop, crouch or kneel.  (R. at 302-03.)  The ALJ agreed with Dr. Bohan's assessment of the plaintiff's lifting ability, included his requirement of a 30-minute sit/stand option in the plaintiff's residual functional capacity ("RFC"), and included some of his limitations on bending, squatting, etc. in assessing the plaintiff's RFC.  (R. 17, 21.)

The plaintiff argues, however, that the ALJ did not explain his basis for rejecting other elements of Dr. Bohan's decision.  But, in fact, he did.  Specifically, the ALJ explained that he did not accept Dr. Bohan's opinion that the plaintiff could sit for only four hours per day, as opposed to six hours, because the medical evidence did not demonstrate difficulty with sitting.  (R. at 21.)  The ALJ explained that he did not accept Dr. Bohan's opinion that the plaintiff could not push/pull with her arms because an April 2005 examination showed full range of motion and no tenderness in the shoulder.  (R. at 21.)

Likewise, the ALJ explained his reasons for rejecting the opinions of Drs. Autio and Congdon. (Tr. 21-22). As to Dr. Autio's opinion, the ALJ explained that the plaintiff's mental health treatment was sporadic and marked by extended gaps in treatment.  (R. at 21.)   It was appropriate for the ALJ to consider a failure to seek medical treatment as evidence that the plaintiff's impairment was not of a disabling severity. *See Mickles*, 29 F.3d at 921.  The ALJ also noted that the plaintiff's reported daily activities were inconsistent with Dr. Autio's opinion that the plaintiff had marked limitations in activities of daily living. *See Johnson v. Barnhart*, 434 F.3d 650, 656 n.8 (4th Cir. 2005) (noting inconsistency between claimant's daily activities and treating physician's opinion as a factor that supported rejecting that opinion).

With regard to Dr. Congdon's opinion, the ALJ accurately stated that Dr. Congdon's

office records contained no findings consistent with a five-pound lifting limit; that an MRI of the plaintiff's lumbar spine showed only minimal degenerative changes; and that Dr. Congdon failed to record any clinical examination findings on several occasions, let alone findings consistent with total disability. (R. at 22.) Dr. Congdon's office notes during May – August 2005 referenced no abnormal examination findings other than knee tenderness and obesity, and primarily documented the plaintiff's subjective complaints (R. at 345-53.) An ALJ may reject a treating physician's opinion if the physician's "own medical notes [do] not confirm his determination of 'disability.'" *Craig*, 76 F.3d at 590.

In her briefs, the plaintiff has summarized the opinions of these physicians and generally complained that the ALJ failed to identify proper legal bases for not giving them controlling weight. The plaintiff argues that the ALJ has effectively substituted his judgment for that of the doctors'. For all the reasons identified above, it is not a fair characterization of the ALJ's decision to say that he was not careful to provide a rationale for why he rejected certain opinions and accepted others. And the Court is of the opinion that the reasons recited are in keeping with permissible grounds for diminishing a treating physician's opinion, as prescribed in *Craig*.

That is not to say that the decision is without defect. But, the Court would go so far as to acknowledge that the ALJ has gone to some length here to substantiate his decision and make clear his conclusions. While the Court is always vigilant to give claimants every opportunity to secure benefits rightly theirs, it will not cherry-pick a decision which in good faith has established the contours of substantial evidence for its outcome albeit imperfectly.

## **CONCLUSION AND RECOMMENDATION**

Based upon the foregoing, this court concludes that the findings of the ALJ are supported by substantial evidence. Accordingly, IT IS RECOMMENDED that the decision of the Commissioner be affirmed.

IT IS SO ORDERED.

                                                 s/BRUCE H. HENDRICKS
                                                 UNITED STATES MAGISTRATE JUDGE

September 17, 2008
Greenville, South Carolina